WASHINGTON (COSTIN v.). See Case No. 3,266.

## Case No. 17,227.

### WASHINGTON v. DAWSON.

[1 Hayw. & H. 236.] [1]

Circuit Court, District of Columbia.    April 7, 1846.

WASHINGTON (DELANY v.). See Case No. 3,755.

WASHINGTON (DIXON v.). See Case No. 3,935.

WASHINGTON, The (DOUGLASS v.). See Case No. 4,033.

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]

[2] Act 1791, c. 68, § 8: Where witnesses do not attend according to summons, the justice before whom such witness ought to have attended shall enforce obedience to his process by attachment of contempt, to be returnable before the justices of the next county court, who shall take cognizance thereof and shall at their discretion fine the offender any sum not exceeding 20s. current money for every such offence, to be applied towards the county charge.  1 Herty's Laws Md. p. 488; Thomp. Dig. 260.

## Case No. 17,228.

### WASHINGTON v. EATON.

[4 Cranch, C. C. 352.] [1]

Circuit Court, District of Columbia.  Nov. Term, 1833.

CORPORATION OF WASHINGTON—VALIDITY OF BY-LAW—USE OF FIRE-ARMS—JUSTICE OF THE PEACE—APPEAL.

1. An appeal to the circuit court of the District of Columbia, for the county of Washington, lies from the judgment of a justice of the peace, for the penalty of a by-law of the corporation of Washington.

2. A justice of the peace, for the county of Washington, has jurisdiction of offences against the by-laws of the corporation of Washington, although the amount of the penalty be discretionary, within certain limits.

3. That discretion does not deprive the party of his right of appeal.

4. The power given by congress to the corporation of Washington, to pass by-laws for the government of the city, is not a delegation of the power of exclusive legislation given to congress by the constitution of the United States.

5. The power given by the charter to the corporation "to prevent and remove nuisances," and "to provide for the prevention and extinguishment of fires," authorized the corporation to pass the by-law of the 30th of March, 1813, against any person who shall "fire or shoot a gun, pistol, or other fire-arm, idly, or for sport or amusement, within 250 yards of any dwelling-house," or within certain limits therein described.

6. A qui tam action will not lie for the penalty of that by-law. It is not necessary that the order for the appeal should be given under the corporate seal.

[Cited in W. U. Tel. Co. v. Scircle, 103 Ind. 229, 2 N. E. 605.]

7. It is not necessary that the justice who takes cognizance of the case, should be one of those appointed under the 6th section of the by-law of November 8, 1830.

8. It is not necessary that it should appear upon the proceedings before the justice, that the by-law had been published five days in some newspaper, by authority of the corporation.

9. The ten-days notice required by the 7th section of the act of congress of March 1, 1823 [3 Stat. 743], was for the benefit of the appellant, not of the appellee.

This was an appeal from the judgment of a justice of the peace for the county of Washington, in favor of the appellee [John H. Eaton] upon a warrant for the penalty of ten dollars for firing a pistol, "idly and for sport and amusement," within certain limits prohibited by the by-law of the corporation of Washington of the 30th of March, 1813.

Mr. Eaton, in proper person, moved the court to dismiss the appeal, and contended that this was a criminal prosecution, of which the justice had no cognizance; his jurisdiction being limited to civil cases of debt or contract. That the penalty being discretionary, namely, not less than five, nor more than ten dollars for each offence, no action of debt will lie for it,

[1] [Reported by Hon. William Cranch, Chief Judge.]

because there was no certain debt upon which to found the action. That he was entitled to ten days' notice of the judgment in his favor, before the commencement of this term, or he was not bound to answer; according to the seventh section of the act of congress of March 1, 1823 (3 Stat. 743), extending the jurisdiction of the justices of the peace. That the appeal was ordered by the mayor only; but the order ought to have been under the corporate seal. That congress had no authority to give the corporation power to make by-laws. That congress are to exercise exclusive legislation, and could not delegate any part of it; but if they could, the corporation can exercise only the part delegated; and no power has been given to the corporation to prevent firing pistols in the city. That the distribution of the penalty, when recovered, is uncertain. It is given to the corporation and the informer. It should have been a qui tam action. That where the discretion of the justice is to be exercised, there can be no appeal; his judgment is conclusive. 1 Paley, Summary Convictions, 268. That it does not appear by the record that Mr. Waters, the justice who took cognizance of the case, was one of the justices designated according to the provisions of the by-law of November 8, 1830, as magistrates to enforce the by-laws; and that it does not appear by the record that the by-law had been published five days before the offence.

R. S. Coxe, for the corporation, as to the exclusive legislation, referred to the "Federalist." As to the power to prohibit the discharge of fire-arms, idly, and for amusement, in the streets, &c., it is included in the power "to prevent and remove nuisances," and "to prevent and extinguish fires." This is not a criminal prosecution; it is a civil action of debt for a penalty. It is not necessary that the amount should be ascertained before the commencement of the suit. Debt will lie for a penalty to be ascertained by a jury or by a judge. Bullard v. Bell [Case No. 2,121]; U. S. v. Colt [Id. 14,-839]; Pemberton v. Shelton, Cro. Jac. 498; U. S. v. Lyman [Case No 15,647]; Smith v. Jackson [Id. 13,064]. The appeal lies, although the penalty is to be imposed according to the discretion of the justice. The decision of the justice is conclusive as to the amount of the penalty, if within the limits of the law; but if he refuses to give judgment for any fine, or beyond the limits prescribed, it is error, and his judgment may be reviewed. If an appeal lies, this court has all the power which the justice had. It was not necessary that the mayor should have given the order to appeal, much less that it should be under the corporate seal. The attorney for the corporation had a right to appeal. As to the designation of the magistrates to enforce the by-laws, the by-law of November 8, 1830, is only directory; it does not deprive the other justices of their concurrent jurisdiction. It is not necessary that it should appear in the record that the justice was one of the designated justices, or that the by-law had been published five days before the offence.

A qui tam action is a statutory action. It is not a common-law right by which any man may sue for the king. It cannot be maintained unless expressly given by statute. But when it is given, the king may sue alone, unless the statute limits the remedy to a qui tam action. It will not lie by the corporation and an informer.

Mr. Kane, of New York, in reply. The discretion is given to the justice alone. This court cannot execute it. The general principle is, that no appeal lies from the discretion of an inferior court. It is only upon mandamus that the discretion of the inferior court can be questioned. Cates v. Knight, 3 Term R. 442. Appeal only lies in cases of debt or civil demand. The by-law does not give an appeal. Boothe v. Georgetown [Case No. 1,651], in this court, at October term, 1823, and Howard v. U. S. [Id. 6,763].

CRANCH, Chief Judge, delivered the opinion of the court, as follows (THRUSTON, Circuit Judge, dissenting):

Appeal from a justice of the peace who had given judgment against the corporation upon a warrant issued against the appellee for a penalty of ten dollars for firing a pistol, idly, and for sport and amusement, within certain limits in the city of Washington, contrary to the by-law of the 30th of March, 1813, which declares, that "the person so firing or shooting, shall forfeit and pay a fine not exceeding ten dollars, nor less than five dollars, at the discretion of any justice of the peace resident within this city; one third whereof shall be for the use of the city; one third for the use of the constable, and the remaining third for the use of the informer," &c. A motion has been made by the defendant to dismiss the appeal, upon the ground that no appeal lies in such a case.

1. It is said that this is a criminal prosecution, and that no appeal lies unless it be expressly given by some statute. But this is a suit for a penalty, given by a by-law of the corporation of Washington, enacted under the authority of its charter, which authorizes the recovery by suit before a justice of the peace, "as in all other cases of small debts." By the seventh section of the first charter of 1802 (2 Stat. 195), which was continued in force by the acts of the 24th of February, 1804 (Id. 254), and 28th of February, 1820 (3 Stat. 543), until the 15th of May, 1820, when the present charter was granted, it is enacted, "that all fines, penalties, and forfeitures imposed by the corporation of the city of Washington, if not exceeding twenty dollars, shall be recovered before a single magistrate, as small debts are by law recoverable; and if such fines, penalties, and forfeitures, exceed the sum of twenty dollars, the same shall be recovered by action of debt in the district court of Columbia for the county of Washington, in the name of the corporation, and for the use of the city of Washington." Although the act of 1802 is repealed by the act of the 15th of May, 1820 (3 Stat. 583), which constitutes the present charter, yet it is evi-

dent that the legislature intended that the former mode of recovering fines and penalties under the by-laws of the corporation, should remain. For, by the ninth section of the new charter it is enacted, that "in all cases where suit shall be brought before a justice of the peace for any fine or penalty arising or incurred for a breach of any law or ordinance of the corporation, execution shall and may be issued, as in all other cases of small debts." It is clear that the legislature considered a fine or penalty incurred for a breach of a by-law of the corporation, as a small debt, and treated it as such, so far as regards the mode of recovery. They have not considered it as a criminal prosecution, but have clothed it entirely in a civil vesture, associated it with other small debts, and given the same course of procedure for its recovery. The justice of the peace has the same jurisdiction of a suit for the penalty of a by-law as of a suit for any other debt. He takes it subject to the same right of appeal. The law makes no distinction between them. It is true, that the act of congress of the 1st of March, 1823 (3 Stat. 743), extending the jurisdiction of justices of the peace to cases of $50 value, only speaks of debt and damages; and of debtor and creditor, and has been construed to refer only to cases of contract; but it is not that act which gives jurisdiction in the present case, although it gives the mode of procedure. The jurisdiction is given by the charter. In all cases in which the justice has jurisdiction, if the value exceed $5, the act of 1823, gives a right of appeal; and it is not material from what source the justice derived his jurisdiction. From 1802, (the date of the first charter,) until the present time, the penalties arising under the by-laws of the corporation, have been recovered before a justice of the peace, and appeals to this court have been constantly allowed and sustained.

2. But, it is said, that in this case the penalty was uncertain; it might be any thing between five and ten dollars, and therefore it was not a debt; and cases were cited to show that debt would not lie for an uncertain sum. Those cases, however, go entirely upon the form of action, to wit, whether it should be an action of debt, or an action of assumpsit. But in proceedings before a justice of the peace, those technical distinctions do not exist, and the question whether the form of action should be debt or assumpsit, cannot arise. The uncertainty of the sum to be recovered, is no objection to the recovery in some form of action. Upon a suit brought for $10, the corporation may recover $5, or any intermediate sum which the justice, in his discretion, may adjudge; and an action of debt would lie for it, although the sum to be recovered should be uncertain at the commencement of the suit, and to be ascertained only by the verdict of the jury, or the discretion of the judge. It is true, that in an action of debt, the plaintiff must demand a certain sum; but he may recover less than he demands, as in the case of Pemberton v. Shelton, Cro. Jac. 498, cited in the argument, where an action of debt was brought for £33, the alleged treble value of tithes which the defendant had failed to set out according to law. The words of the statute of 2 & 3 Edw. VI. c. 13, which gave the penalty were, "under the pain of forfeiture of treble value of the tithes so taken or carried away," without stating in what manner, or by what form of action it should be recovered. After verdict for the plaintiff for twenty shillings, the defendant moved in arrest of judgment, that the plaintiff had not demanded enough; for by his own showing in his declaration, the value of the tithes not set out was £11 8d., and the treble value, therefore, was £33 2s., but the plaintiff had demanded only £33, without showing satisfaction of the two shillings. But it was not allowed, "for all the court held it was well enough," and said, "when the demand is of no sum certain, nor what he should recover in certainty, but only so much as shall be given by the jury, although he varies from the first valuation, it is not material; for he shall not recover according to his demand in the declaration, but according to the verdict; wherefore it was adjudged for the plaintiff." So also in the case of U. S. v. Colt [Case No. 14,839], Judge Washington says: "Thus stands the doctrine in relation to the action of debt on contracts; and if debt will lie on a contract where the sum demanded is uncertain, it would seem to follow that it would lie for a penalty given by statute, which is uncertain and dependent upon the amount to be assessed by a jury, for when they have assessed it, the sum so fixed, becomes the amount of the penalty so given." And, in speaking of the case of Pemberton v. Shelton, he says: "It cannot be said that this doctrine was laid down in consequence of the court considering this as a statutory action, to which it was necessary to accommodate the recovery, by changing general principles of law applicable to other cases, for it will appear, by reference to the statute, that it prescribes no remedy for enforcing the penalty; and that debt was brought, upon the common-law principle, that where a statute gives a penalty, debt may be brought to recover it." Debt, therefore, may be brought for a penalty given by a statute, although it be uncertain; and an uncertain penalty, given by a statute, is a debt.

3. But it has been said that the by-law gives a discretion to the justice of the peace, and to him alone; and that where the inferior court has a discretion, error will not lie. This may be true in regard to writs of error at common law; but in appeals, which bring up the whole case, law and fact, as in proceedings under the civil law, where the cause is to be heard de novo, and the parties have a right in the appellate court, "non allegata allegare, et non probata probare," the case is otherwise. There the appellate court stands in the place of the inferior court, and has all the power which the inferior court had. Such is the case in the ecclesiastical courts, courts of chancery, and courts of admiralty. Appeals from justices of the peace, resemble appeals under the

civil law, and have always been considered here, as bringing up the whole cause to be tried again de novo. The by-law, no doubt, intended that the court that tried the cause should exercise the discretion which it gave, and it could not deprive this court of its appellate jurisdiction, by giving a discretion to the inferior tribunal. It could neither give nor take away jurisdiction from the justice of the peace, or from this court, for both derive their power and jurisdiction from an authority paramount to that of the corporation.

4. It has also been suggested that, by the constitution of the United Sates, congress, and congress alone have the right to legislate for this District; that it is a power which cannot be delegated; and that the legislative power granted by congress to the corporation of Washington, is a delegation of that power of exclusive legislation, which, by the constitution, is vested in congress alone. If this doctrine be correct, then is congress, at once, deprived of one of its most important legislative powers; that of granting charters to corporations aggregate within the District; for it is, by common law, incident to every corporation aggregate to make by-laws for the government of its own members. 10 Coke, 30, 31; Bac. Abr. "Corporation," D. But those by-laws extend only to those members, and such as voluntarily place themselves within the jurisdiction of the corporation. They do not extend to any other part of the District. They make no part of the legislation over the District. It is not, therefore, a delegation of the power of exclusive legislation.

5. But, it is said, that if congress had a right to grant this charter, and to give the corporation the legislative power it contains, yet that power is limited to the specific objects designated in the charter, and that the discharge of fire-arms in the city, is not one of those specific objects; and therefore the by-law is not warranted by the charter, and is void. Among the powers specifically granted to the corporation, are the "power and authority to prevent and remove nuisances;" "to provide for the prevention and extinguishment of fires;" and "to pass all laws which shall be deemed necessary and proper for carrying into execution the powers vested, by this act, in the said corporation or its officers." Nothing could be a greater nuisance to the inhabitants of the city, than the discharge of fire-arms, idly, and for sport or amusement in the streets, or near their dwelling-houses, if practised to an unlimited extent. To prevent that nuisance, the corporation had no other means than to prohibit such a discharge. The discharge of fire-arms near a stable, or other combustible matter, might set fire to it, and endanger the lives and property of the citizens, and its prohibition might be justified by the authority to prevent fires. The means of carrying into execution the specific powers granted, are left to the discretion of the corporation. This by-law, therefore, was warranted by the charter.

6. It has also been suggested that this ought to have been a qui tam action, because the by-law says, "one third whereof" (that, is, of the penalty) shall be for the use of the city; one third for the use of the constable. and the remaining third for the use of the informer, or to the trustees of the poor, for the use and benefit of the poor of this corporation, in case the informer declines accepting the same. It might be a sufficient answer to this objection, to say, that in a qui tam action, the plaintiff always sues for the king, or sovereign, and himself; and not for another subject or citizen and himself; nor for a body politic, other than the king, and himself. If a penalty be given to be divided among several persons, (subjects or citizens,) one cannot maintain an action for himself and the others, unless such right be expressly given by statute. If the informer should bring a qui tam action, in this case, he would have to declare that he sued as well for the corporation of Washington and for the constable, or for the trustees of the poor, as for himself, for no part of the penalty goes to the United States. No such qui tam action has yet been maintained; certainly not in this court. But Hawkins (book 2, c. 26, § 17), says that an information, or action qui tam, will not lie "unless the whole or part of the penalty be expressly given to him who will sue for it; for otherwise it goes to the king, and nothing can be demanded by the party. But where the statute gives any part of the penalty to him who will sue for it by action or information, &c. I take it to be settled at this day, that any one may bring such action or information and lay his demand tam pro domino rege quam pro seipso." This by-law does not give any part of this penalty to any person who will sue for it. It only declares to whose use it shall be applied after it has been recovered in the usual manner; and provides that if the informer "declines accepting" his third, it shall go to the trustees of the poor. The expression "declines accepting" implies an offer, which implies a previous recovery. If the informer were the person to sue for it, the language would have been, "declines suing," and not "declines accepting." A qui tam action, therefore, was not the proper remedy.

7. It has been contended also that this appeal should be dismissed because it has not been ordered under the corporate seal, but only under the direction of the mayor. The doctrine, that a corporation can do nothing but under its corporate seal, has long been exploded. There are many acts which it may do by its agents under the authority of its by-laws. This appeal was taken by the attorney at law of the corporation, who was duly appointed by the mayor, under the by-law of June 30th, 1824, creating the office; and which by-law was authorized by the seventh section of the charter which gives the corporation power to provide for the appointment of such officers as may be necessary to execute the laws of the corporation. And by

the third section of the charter which authorizes and requires the mayor to nominate, and, with the consent of the board of aldermen, to appoint to all offices under the corporation, except commissioners of election. By the by-law of the 30th of June, 1824, it is made the duty of the attorney, "to defend the interests of the corporation in all suits instituted by or against the corporation." He had a right, and it was part of his duty to take this appeal, if he believed that the interests of the corporation required it. The appeal is therefore correctly taken, without any special order under the corporate seal.

8. It is also objected that Mr. Waters who issued the warrant and tried the cause below, had no jurisdiction because it does not appear upon the proceedings that he was one of the justices of the peace selected in the manner designated by the sixth section of the by-law of the 8th of November, 1830, to issue warrants for offences against the by-laws of the corporation. That by-law, however, is only directory to the officers concerned in the prosecution of offences against those by-laws, and cannot deprive a justice of the peace of a jurisdiction given to him by a paramount authority. But however that may be, it is not a good ground for dismissing the appeal, that the selection does not appear upon the proceedings before the justice. It is a fact which may be proved here if necessary.

9. It is also objected that it does not appear on the proceedings that the by-law had been published five days in some newspaper of the city, by authority of the corporation, according to the fifth section of the by-law of the 8th of November, 1830. But it is not necessary that the fact should appear upon the proceedings of the justice. As the cause is before this court upon an appeal which brings up the whole cause, to be tried de novo, that fact may now be proved here if capable of proof; or possibly, after a lapse of twenty years, and the publication of it in books and pamphlets, the publication of it in a newspaper may be presumed; and perhaps the by-law of November 8th, 1830, was intended to apply only to by-laws subsequently enacted. At all events it is no ground for dismissing the appeal, that that fact does not appear upon the proceedings. Upon none of the grounds stated, therefore, can this court dismiss the appeal.

After the above opinion was delivered Mr. Eaton observed that the court had omitted to notice one objection upon which he relied, namely, that he had not had ten days' notice of the judgment in his favor before the sitting of this court; and he contended that he was entitled to such notice, by the seventh section of the act of the 1st of March, 1823, extending the jurisdiction of justices of the peace.

THE COURT answered, that the reason why the court had not noticed it was that they did not exactly understand the purport of his objection. Mr. Eaton then explained his objection, as above.

But THE COURT said that the provision in the clause of the seventh section of the act referred to, was evidently made for the benefit of the appellant, not of the appellee; and was merely to prevent the original defendant's appeal from being dismissed because not brought up to the term next after the rendition of the judgment, if he had not notice of such judgment ten days at least before that term. That section does not require that the party in whose favor a judgment is rendered by the justice, should have ten days' notice of such judgment in any case.

THRUSTON, Circuit Judge, dissenting, delivered the following opinion: On an appeal from the judgment of the magistrate, in favor of the defendant. The case was as follows: John H. Eaton was charged, before Waters, a magistrate of the county of Washington, with firing a gun, or pistol, or other fire-arm within certain limits in the city of Washington, against the provisions of an ordinance of the corporation which subjects the offender to a fine, not less than five nor more than ten dollars, at the discretion of the magistrate. The magistrate gave judgment, after hearing the case, in favor of the defendant, Eaton; and upon this judgment the corporation have appealed to this court.

The defendant, in support of the judgment of the magistrate, has submitted to the court the following considerations: (1) That the appeal ought to be dismissed, because the magistrate was not one of those selected by the corporation for the trial of cases in which they were parties. (2) Because the appeal was not ordered by the corporate body in their corporate character, but by the mayor, J. P. Van Ness. (3) Because this court has no appellate jurisdiction in the case of fines and pecuniary mulcts. (4) If this court has jurisdiction generally where the fine is certain and fixed, they have none where the quantum of fine is uncertain, but dependent on the arbitrium of the magistrate between a minimum and a maximum limit.

As to the first point, "that the magistrate was not one of those selected by the corporate authorities according to the provisions of the ordinance for the hearing of cases of this sort." This objection is not valid; because every justice of the peace has equal power and jurisdiction, and the corporation have no right to disfranchise any justice of the peace, or to invest any of them with exclusive privileges which may not be enjoyed by any other magistrate. That the corporation may, for their convenience, and because of the greater trust and confidence they may repose in some justices over others, require of their police officers to have the corporation cases brought before certain justices of their selection, may be proper; but this is a matter which only relates to the corporation and those officers. If the officers disobey this in-

junction, it is competent for the corporation, perhaps, to dismiss them as corporate officers; but the jurisdiction of justices of the peace is derived, not from the corporation, but from the laws of the United States; and any justice of the peace is as competent to entertain jurisdiction of pecuniary mulcts, within certain limits, as any other justices; and it is not error, if any other than those selected by the corporation take cognizance of the offence.

Secondly. "The appeal was not ordered by the corporate authorities, but by the mayor." There is nothing in this objection. The appeal is not in the name or in behalf of the mayor, but of the corporation in their corporate style and character. It is true, the mayor directed the appeal in behalf of the corporation; and this he might do as their agent, and ministerial officer, and they, by their attorney in court, have ratified and avowed his act. Surely it would be requiring too much, that by a solemn resolution of the board they should have authorized this appeal, and further solemnized it by affixing thereto their corporate seal. We have never questioned the authority of any attorney of this court, nor required proof of his substitution, or representative power, when his name is marked on the docket, and no one appears to question his right to represent the party for whom he professes to act. I have never known an instance in which this court have ever required an attorney, admitted to practise therein, to produce his warrant to represent any party to a suit therein. The confidence reposed in the bar, and the comity due to them in the relations in which they stand towards the bench, forbid this scrutiny. It would be tolerated only where the party, whom the attorney professes to represent, should disavow the doings of the attorney.

As to the third objection, "this court has no appellate jurisdiction in the case of fines and pecuniary mulcts." Here, indeed, is a matter of grave consideration. I know of no appellate power in this court from the judgment of a justice of the peace, but what is given by the statute. "The act of March 1, 1823 (3 Stat. 743), for extending the jurisdiction of single magistrates," which empowers such magistrate to take cognizance of cases as far as $50, describes precisely the cases in which such justice may exercise jurisdiction. The cases there enumerated, most clearly, in my opinion, are those of a civil character only, because it speaks of the debtor, "his executors and administrators;" because it authorizes the justice to give interest on the judgment, &c.; because it exempts females, and males over seventy from arrest, imprisonment, and execution. In the seventh section of the act, an appeal from the judgment of the magistrate is given to this court in all cases where the judgment is for a sum over five dollars. Now, as it is inconsistent with the character of a pecuniary fine that executors and administrators should be liable for it, or interest charged on the judg-

ment for it; and against reason that females, or men over seventy should be exempted from the penalties for violating a penal law, I take it for granted that this first section, prescribing the jurisdiction of justice of the peace, was intended, and is by necessary construction, limited to cases of a civil character only. Then, when the right of appeal was given by the said seventh section to this court from the judgment of a magistrate, is not that appeal only from judgments rendered under the powers given to the magistrate by the preceding section; and is it not clear that those powers were limited to cases of a civil character only? Cases where executors and administrators might be charged; where interest might be computed and taxed; where sex and age were exempted from arrests and imprisonments on the judgments, which is utterly inconsistent with any of the characteristics of a criminal law; for who ever heard of exemptions in favor of age or sex from the animadversions of a criminal statute? yet, notwithstanding this clear restriction of our appellate jurisdiction to cases of a civil character, yet, we have undertaken to exercise it in criminal cases, and thus, by nice and rigid application of the rules of pleading, to defeat and prostrate the guards and securities of society derived from the denunciations of the law by inspecting the warrants and doings of justices of the peace, trying them by the touchstone of technical criticism, and reversing their decisions on grounds, at least, doubtful, and which must inevitably lead to the annihilation of the whole city police; and how have we usurped this fatal power thus to loosen the bands which bind society together, to give this triumphant victory to the wicked, to trample with impunity on all the rights, the peace, and comfort of the more orderly and better disposed portion of society. By a forced and gross perversion of terms, by considering a penalty a pecuniary mulct for a certain offence, as a debt. How can this be? What gives a magistrate jurisdiction when he issues a warrant against an offender for the violation of a penal statute? Surely, at the time the warrant issues there is no debt subsisting; the debt is not the foundation of the warrant, but the consequence of conviction; non constat, at that time, that the party will be convicted. What does the accused come to defend? A debt? No; against the commission of an act forbidden by law. There is not a word about debt in the whole proceeding, except for form's sake, in the warrant. The whole question is, did you, or did you not, commit the offence? If the justice decides affirmatively, then indeed the penalty follows—a pecuniary mulct. On an appeal, then, what does this court examine? Whether the accused owes the money or not? No; whether he has committed the offence or not. Where do we get the power to try a question of this sort? Is it because in the warrant the justice has, in conformity with some general directory provision in the charter of the corporation, charged the offense as a debt? Suppose the form of the warrant changed, and

it were to charge the defendant specifically with the real truth, that he had violated the law by shooting, &c., against the form of the ordinance in such case made and provided, as in offences indictable in this court where the special offence is set out; then, not being a debt, there would be no appeal. Now, by the statute of Maryland, justices are invested with jurisdiction over misdemeanors where the penalty does not exceed £5 by way of action of debt; but their jurisdiction was final, and there was no appeal from their judgments.

But we claim a right of entertaining an appeal from the judgments of magistrates in cases of violations of penal ordinances of the corporation entirely, as I understand from the expressions in the charter of the corporation, "authorizing penalties to be recovered, and executions to issue for them as in cases of small debts." Does this give an appellate jurisdiction to this court? The form of proceeding for the recovery of these penalties does not necessarily invest them with all the character and properties of debts purely civil; for I have endeavored to show the absurdity resulting from such a construction, and that the appellate jurisdiction given us by the statute can be commensurate only with the original jurisdiction given by the same statute to the justices, and that it would be most absurd and unreasonable that penalties for municipal offences should be embraced in the statute, from the incongruity subsisting between pecuniary mulcts and debts of a purely civil nature. By the Maryland law, no appeal was allowable from the judgment of a magistrate in the case of fines and penalties, for by the act of 1791, c. 68, for the speedy recovery of small debts out of court, &c., &c., the jurisdiction of the justices as well as that of the county courts by appeal from their judgments, was confined to cases strictly civil in their nature; "to debts or sums of money due on contract, or damages for the non-delivery of grain or other articles," excluding debts, (if they may be so called,) incurred by transgressing penal laws. If there be any statute of Maryland allowing appeals in cases of misdemeanors, I am not aware of it. And so in our statute, to debts where interest might be taxed, executors and administrators made liable, and age and sex were exempted from imprisonment; in such cases only does the statute authorize an appeal; and pecuniary mulcts cannot, without violating every principle which characterizes them, be brought within the scope of the statute; therefore their recovery is provided for by the aforesaid clause of the charter, making them "recoverable as other small debts," &c., so that it appears that the state was satisfied to leave the exclusive jurisdiction over small offences, to the small extent of five dollars' penalty, to the magistrate. In this existing state of things, the congress pass the aforesaid act, "for extending," &c. Surely if they meant to invest this court with power to revise the proceedings of justices under corporation ordinances imposing penalties, they would have used terms more congenial with the matter. A

long established law is not to be annulled by farfetched implications, or a subsequent statute, when any sensible interpretation of the statute utterly repudiates such implications. Surely they never meant that if a man, sentenced to pay a penalty, should die before it was levied, that his executors or administrators should be charged with it; surely not, that the judgment for the penalty should carry interest; and certainly not, to exempt pauper vagrants and abandoned profligates of any age or sex from the only coercive power over them, that of imprisonment and arrest, when they incurred the penalty, and possessed no means of paying it. See the consequences: a woman, or a man over seventy, may riot in the violation of every penal ordinance, may set at defiance the whole police of the city, if there be no breach of the peace. This is really more deference than was ever paid to age or sex in any country. This court, at least, has not been quite so indulgent to the ladies, as some recent convictions, and not very lenient sentences, prove. But we claim appellate jurisdiction of such cases from the expressions, "in all cases where," &c., in the section authorizing appeals from the judgments of single magistrates; now, that word "all," can, I think, only apply to the enumerated cases in the first section; the appellate jurisdiction can be commensurate only with the given original jurisdiction, and that, I have endeavored to show, embraces civil cases only. But the word "debt" is used in the warrant. It is called a plea of debt; and hence our claim to entertain an appeal in the case. But this form was given by the Maryland statute, and has probably been continued without much reason ever since; and because of this anomalous form of proceeding, by calling it an action of debt, does it necessarily involve all the incidents of debt? Certainly a debt created by statute is available against executors and administrators; a penalty is not. It carries interest per se; a penalty does not. In short, there is no rational construction of the statute "for extending," &c., either from the words, or meaning, or purport of the clause giving and defining the cases in which a justice may exercise original jurisdiction, as well as those granting appeals to this court from their decisions, that can justify this court in entertaining appeals from the judgments of justices, under penal statutes and ordinances; and this is greatly strengthened by the strange consequences that must result from such an exercise of jurisdiction. As far as I can discern, there is no such appeal allowable; it was so in Maryland; and as there are no express words, nor rational construction of the statute which has changed the law, I am compelled to say that the jurisdiction of the magistrates in cases of penal statutes and ordinances is exclusive and beyond our control, as much as our jurisdiction is final and beyond the control of the supreme court in criminal cases. Whether it be a wise provision of the law I know not. If it be thought not so, the congress is competent, and they only, to change it. I am of opinion, however, that if we deter-

mine to exercise appellate jurisdiction in such cases, and do not relax somewhat of that severity and legal scrutiny in regard to the doings of justices, we shall have no criminal law worth having. It has been ruled, and not yet overruled by the court, that a criminal of any the most aggravated offence, who has been bailed, and forfeited his recognizance, is clear of the crime. That criminals sentenced to imprisonment and fine for misdemeanors, can be entitled to the bounds; and for a fine only can be released under the insolvent laws. Having hitherto exercised this now disputed appellate jurisdiction, the warrants of magistrates have been examined with the most rigid legal criticism because the magistrates had not framed their warrants with all the exactness of indictments, and their judgments have been reversed, and that wholesome police, so essential to the well-being of our citizens, paralyzed; mittimuses are looked into with the eyes of special pleaders; and, in a recent case, a man was discharged because, having incurred a penalty and being unable to pay it, and having for such inability been committed to the workhouse, the mittimus neglected to state that he was a man of color, although, when brought before the court, he was evidently so; and although the offence could only be committed by a man of color, and it was sufficiently set out, in the mittimus, in every respect, except the words "man of color." We believed the mittimus, then, that he, by possibility, might not be a man of color, against the evidence of our own eyes. But here it was urged, and in all cases where we had heard appeals in such cases, the old maxim, "It is a penal statute, and must be construed strictly," but where the question is jurisdiction or no jurisdiction, it is quite a civil affair; "nothing but an action of debt," and being so we have jurisdiction by the statute. If it be a civil matter, how came we to apply the strict rules of criminal pleading to cases of a civil character only? This seems to be blowing hot and cold with the same breath; to get jurisdiction, the case is merely one of debt, a civil matter altogether; when we get it before us we pounce upon it with all the stern severity and criticism of criminal pleadings, utterly disregarding the directions of the statute that we are to decide according to law, justice, and equity, which I take to be clearly indicative of an intention in the legislature to authorize the court to relax the strict rules of construction in regard to warrants for pecuniary mulcts, if they be really purely civil in their character, if there be enough, though not set out in technical form, in the warrant, to inform the defendant of the offence with which he is charged, or otherwise we disregard entirely the emphatic and important words, justice and equity, and the more especially as it may be supposed to have been in the contemplation of the legislature, that the warrants from which appeals are taken to this court are devised by justices of the peace who are not lawyers by profession, nor skilled in the subtleties of special pleading. I have done with this objection; and if there be a doubt in the mind of any on this point, I think there can be but little as to the validity of the last objection, namely, "That if this court has jurisdiction generally where the fine is certain and fixed, they have none when the quantum of fine is uncertain, and depends on the discretion of the magistrate between a minimum and a maximum limit."

I need say nothing of the argument, that it is a settled principle, that, from the judgment of a court in the exercise of a discretionary power, there is no appeal, which I thought had great force in it; nor of the argument of the counsel for the corporation, that, inasmuch as the magistrate dismissed the warrant, and exercised, consequently, no arbitrium, that, as the case would be taken up, de novo, in this court, this court was competent, if they reversed the justice's decision, to assess the fine. It is true, if we were to take up the case, and hear the evidence, we might be of opinion that the justice did wrong, and that he ought to have given judgment for the corporation; but, when we had done so, and come to the point of assessing the fine, we should be at fault. Notwithstanding the Proteus character assumed for prosecutions for pecuniary penalties, I consider them as belonging to the criminal side of the court, as real penal statutes, whether animadverting on mala in se, or mala prohibita, and the defendant entitled to all the privileges given by the statute; and one is, that the fine shall be assessed by the justice, at his discretion, and not by this court, at theirs. Suppose, now, after reversing the magistrate's decision, we come to the consideration of assessing it, where shall we fix it; at the minimum, the maximum, or between the two? Neither of the two latter, because the law has given this power to another and not to us; does it follow, because the law has given it to one, it can be exercised by three others? The defendant has a right to have his exclusive judge, as to that point; well, it may be said, we may safely fix it at the minimum term; the defendant could have nothing to complain of there; but the law would, for it contemplated something more—a higher assessment—a greater fine; we must take the whole power of the justice, or none; we cannot execute half a law, because we cannot get at the other half; all the range between five and ten dollars is barred against us.

For these reasons, I am for affirming the judgment.